## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>TURBO SOLUTIONS INC., f/k/a Alex Miller Financial Services Inc., d/b/a Alex Miller Credit Repair, and<br><br>ALEXANDER V. MILLER, in his individual and corporate capacity,<br><br>    Defendants. | Civil Action No. 4:24-cv-02451 |

## MOTION AND MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ........................... 1

SUMMARY OF THE ARGUMENT ............................................................................. 1

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ........................ 1

JURISDICTION AND VENUE .................................................................................... 2

STANDARD FOR GRANTING SUMMARY JUDGMENT ........................................... 2

ARGUMENT ............................................................................................................... 3

I.      PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON
        LIABILITY ON ALL COUNTS. .................................................................... 3

        A.      Defendants Have Admitted, and the Court Has Found, That
                Defendants Are Liable on All Counts. .............................................. 3

        B.      Defendants Failure to Provide Discovery and Defendant Miller's
                Assertion of Fifth Amendment Rights Preclude Defendants from
                Presenting Contrary Evidence and/or Warrant Adverse Inferences. ........... 4

        C.      Undisputed Evidence Establishes Defendants' Liability on All Counts ......... 5

                1.      Defendants Violated Section 5 of the FTC Act (Count I) ............. 5

                2.      Defendants Violated CROA (Counts II–VI) ............................ 8

                3.      Defendants Violated the TSR (Counts VII-VIII) ...................... 12

                4.      Defendant Miller is Individually Liable for All Counts. ............ 13

II.     PLAINTIFF IS ENTITLED TO ALL REQUESTED RELIEF .......................... 14

        A.      Additional Injunctive Relief Is Necessary and Appropriate ................. 14

        B.      The Court Should Award a Civil Penalty of $10,000,000. ................. 16

        C.      The Court Should Award $9,358,224.30 in Consumer Redress .......... 18

CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................... 2

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................... 2

*FTC v. Bay Area Bus. Council*,
  423 F.3d 627 (7th Cir. 2005) ............................................................................... 13

*FTC v. BlueHippo Funding, LLC*,
  762 F.3d 238 (2d Cir. 2014) ........................................................................... 6, 20

*FTC v. Braun*,
  2024 WL 449288 (S.D.N.Y Feb. 6, 2024) .......................................................... 18

*FTC v. Bronson Partners, LLC*,
  674 F. Supp. 2d 373–94 (D. Conn. 2009) .......................................................... 15

*FTC v. Colgate-Palmolive Co.*,
  380 U.S. 374 (1965) ............................................................................................. 16

*FTC v. Cyberspace.com, LLC*,
  453 F.3d 1196 (9th Cir. 2006) .............................................................................. 5

*FTC v. Direct Mktg. Concepts, Inc.*,
  648 F. Supp. 2d 202 (D. Mass. 2009) ................................................................. 16

*FTC v. Direct Mktg. Concepts, Inc.*,
  2004 U.S. Dist. LEXIS 11628 (D. Mass. June 23, 2004) ..................................... 6

*FTC v. Elegant Solutions, Inc.*,
  2022 WL 2072735 (9th Cir. Jun. 9, 2022) .......................................................... 19

*FTC v. Federal Check Processing*,
  2016 WL 5940485 (W.D.N.Y. Oct. 13, 2016) ..................................................... 15

*FTC v. Figgie Int'l, Inc.*,
  994 F.2d 595 (9th Cir. 1993) ................................................................... 6, 19, 20

*FTC v. Five-Star Auto Club*,
  97 F. Supp. 2d 502 (S.D.N.Y. 2000) .................................................................... 6

*FTC v. Kennedy*,
  574 F. Supp. 2d 714 (S.D. Tex. 2008) .................................................................. 5

*FTC v. Namer*,
  781 F. Supp. 1136 (E.D. La. 1991) ....................................................................... 5

*FTC v. Nat'l Urological Grp., Inc.,*
   645 F. Supp. 2d 1167 (N.D. Ga. 2008) ................................................................. 6

*FTC v. Pantron I Corp.,*
   33 F.3d 1088 (9th Cir. 1994) ............................................................................... 8

*FTC v. Sec. Rare Coin & Bullion Corp.,*
   931 F.2d 1312 (8th Cir. 1991) ............................................................................. 20

*FTC v. SlimAmerica, Inc.,*
   77 F. Supp. 2d 1263 (S.D. Fla. 1999) ................................................................. 6

*FTC v. Stefanchik,*
   559 F.3d 924 (9th Cir. 2009) ............................................................................... 13

*FTC v. USA Fin., LLC,*
   415 Fed. Appx. 970 (11th Cir. 2011) ................................................................. 5

*FTC v. Williams, Scott & Assocs., Ltd. Liab. Co.,*
   679 F. App'x 836 (11th Cir. 2017) ..................................................................... 5

*FTC v. World Travel Vacation Brokers,*
   861 F.2d 1020 (7th Cir. 1988) ............................................................................. 6

*FTC v. Zaappaaz, LLC,* No. 4:20-CV-02717,
   2024 WL 1237047 (S.D. Tex. Mar. 21, 2024) ................................................. 14, 15, 19

*Hinojosa v. Butler,*
   547 F.3d 285 (5th Cir. 2008) ............................................................................... 5

*FTC v. Instant Response Sys.,*
   2015 WL 1650914 (E.D.N.Y. Apr. 14, 2015) ................................................... 15

*Litton Indus., Inc. v. FTC,*
   676 F.2d 364 (9th Cir. 1982) ............................................................................... 16

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ............................................................................................. 2, 3

*New Hampshire v. Maine,*
   532 U.S. 742 (2001) ............................................................................................. 3

*FTC v. OMICS Grp. Inc.,*
   374 F. Supp. 3d 994 (D. Nev. 2019) ................................................................. 16

*Pegram v. Herdrich,*
   530 U.S. 211, n.8 (2000) ..................................................................................... 3-4

*Removatron Int'l Corp. v. FTC,*
   884 F.2d 1489 (1st Cir. 1989) ............................................................................. 6

*SEC v. Mgmt. Dynamics, Inc.,*

515 F.2d 801 (2d Cir. 1975) ........................................................................................ 14

*United States v. Caldwell*,
586 F.3d 338 (5th Cir. 2009) ................................................................................... 3

*United States v. Dish Network LLC*,
256 F. Supp. 3d 810 (N.D. Ill. 2017) ..................................................................... 17

*United States v. MyLife.com, Inc.*,
567 F. Supp. 3d 1152 (C.D. Cal. 2021) .................................................................. 19

*United States v. Nat'l Fin. Servs.*,
98 F.3d 131 (4th Cir. 1996) ..................................................................................... 17

*United States v. Reader's Digest Ass'n Inc.*,
494 F. Supp. 770 (D. Del. 1980) ............................................................................ 18

*United States v. W.T. Grant Co.*,
345 U.S. 629, 73 S. Ct. 894 (1953) ........................................................................ 14

*Villagran v. Central Ford, Inc.*,
524 F. Supp. 2d 866 (S.D. Tex. 2007) .................................................................... 3

## Statutes

15 U.S.C. § 44 ................................................................................................................. 5

15 U.S.C. § 45 .......................................................................................................... passiim

15 U.S.C. § 57b ............................................................................................................. 19

15 U.S.C. § 1679a ........................................................................................................... 9

15 U.S.C. § 1679b .................................................................................................... 9, 10

15 U.S.C. § 1679d ......................................................................................................... 11

15 U.S.C. § 1679e ......................................................................................................... 11

15 U.S.C. § 1679h ......................................................................................................... 19

## Rules

Fed. R. Civ. P. 37 ........................................................................................................... 4

Fed. R. Civ. P. Rule 26 .................................................................................................. 4

Fed. R. Civ. P. Rule 30 .................................................................................................. 2

## Regulations

16 C.F.R. § 1.98 ............................................................................................................ 17

16 C.F.R. § 310.2 .......................................................................................................... 12

16 C.F.R. § 310.3 ................................................................................................ 12

16 C.F.R. § 310.4 ................................................................................................ 13

16 C.F.R. § 310.6 ................................................................................................ 12

**Treatises**

18B Charles Allen Wright et al.,

    *Federal Practice and Procedure* § 4477, (3d ed. June 2024 update) .......................... 4

18 Moore's Federal Practice - Civil § 134.30 (2024) ................................................ 4

## STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

1.      Whether judgment should be entered against Defendants on all counts in the Complaint.

2.      Whether the injunctive relief, civil penalties, and consumer redress award contained in Plaintiff's proposed order are appropriate.

## SUMMARY OF THE ARGUMENT

Defendants operate an unlawful credit repair scam that has duped consumers into paying millions of dollars for illusory and illegal credit repair services. Undisputed evidence establishes, Defendants have admitted, and this Court has already found that Defendants violated Section 5 of the FTC Act, 15 U.S.C. § 45, the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679–1679j and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310. *See* Permanent Injunction (ECF No. 14). This Court also has already enjoined Defendants from continuing to operate their credit repair business unlawfully, but Defendants have defied that order. Accordingly, the United States hereby moves for summary judgment and seeks a more restrictive injunction that entirely prohibits Defendants from offering any credit repair services, as well as a $10 million civil penalty and an additional $9,358,224.30 in monetary relief to redress injuries to consumers.

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

The United States filed its complaint and an *ex parte* motion for a temporary restraining order under seal on March 1, 2022. ECF Nos. 2, 3. On March 4, the Court entered a temporary restraining order and set a hearing for March 18. ECF No. 9. At that hearing the parties consented to a permanent injunction and order setting forth findings of fact and prohibiting Defendants from continuing certain illegal practices in connection with credit repair services. ECF No. 14. That same day, the Court entered that permanent injunction and also issued a preliminary injunction requiring Defendants to preserve documents and to refrain from making large expenditures outside the ordinary course of

business. ECF No. 15. On May 31, Defendant Miller posted to Instagram that his credit repair operation is "back open for new business" and referred to this lawsuit as "frivolous." SUMF ¶ 36. After the Court denied multiple motions by Defendants seeking to dismiss this case, the Government served interrogatories and document requests on Defendants, but Defendants refused to provide any information or produce any documents in response. After Defendants refused to appear at depositions despite being served with notices under Rule 30, the Court ordered Defendants to appear for depositions at a hearing on June 28, 2024; Defendants, through counsel, have continued to refuse to appear for depositions and have refused to consent to a Government-proposed briefing schedule that would have permitted time to compel Defendants' depositions. *See* ECF 52, 56-1. On August 14, 2024, counsel for Defendants represented to the Government and the Court that he no longer represents Defendants and moved to withdraw. ECF No. 54.

## JURISDICTION AND VENUE

As the Court has previously found, this Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants, and venue is proper in this district. *See* ECF Nos. 14, 43 (order denying motion to dismiss).

## STANDARD FOR GRANTING SUMMARY JUDGMENT

The Court should grant summary judgment if the pleadings and other documents show there is "no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). The court must enter summary judgment "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted); *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). While the Court must view the facts in the light most favorable to the non-moving party, that party must come forward with "'specific

facts showing there is a *genuine issue for trial.*" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. Proc. 56(e)) (emphasis added); *see also Villagran v. Central Ford, Inc.*, 524 F. Supp. 2d 866, 872 (S.D. Tex. 2007) ("The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.") (citing *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 302 (5th Cir. 2004)).

## ARGUMENT

## I.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON LIABILITY ON ALL COUNTS.

### A.   Defendants Have Admitted, and the Court Has Found, That Defendants Are Liable on All Counts.

At a hearing on March 18, 2022, the parties stipulated to the following facts:

> The United States has shown, and Defendants have not contested, that Defendants Turbo Solutions Inc. and Alexander V. Miller have engaged in acts or practices that violate Section 5 of the FTC Act, 15 U.S.C. § 45, CROA, 15 U.S.C. §§ 1679-1679*l*, and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310. In particular, as demonstrated by consumer declarations, consumer complaints, and the additional documentation filed by the United States, the United States has shown, and Defendants have not contested, that in numerous instances, in connection with the marketing and sale of credit repair services, Defendants have falsely claimed they can improve consumers' credit scores by removing all negative items from their credit reports and adding credit building products. In numerous instances, Defendants have also filed or caused to be filed fake identity theft reports on the FTC's identitytheft.gov website. In addition, Defendants have routinely taken prohibited advanced fees for their credit repair services and have not made required disclosures regarding those services.

*See* Permanent Injunction, ECF 14 ¶ B. Because the parties stipulated to these facts, they are conclusively established. *United States v. Caldwell*, 586 F.3d 338, 342 (5th Cir. 2009) ("When one party stipulates to a disputed fact, the stipulation conclusively proves that fact.").

Moreover, the Court adopted the parties' stipulation by entering these findings in a permanent injunction order. ECF No. 14. Defendants are now judicially estopped from contesting these admitted facts. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *see also Pegram* v. *Herdrich*, 530 U.S. 211,

227, n.8 (2000) (judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase"); 18 Moore's Federal Practice - Civil § 134.30 (2024) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."); 18B Charles Allen Wright et al., *Federal Practice and Procedure* § 4477, (3d ed. June 2024 update) ("Absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."). Accordingly, liability on all counts has already been established; the only question remaining for the Court is whether the Government's proposed remedies are appropriate. *See infra* Part II.

### B. Defendants Failure to Provide Discovery and Defendant Miller's Assertion of Fifth Amendment Rights Preclude Defendants from Presenting Contrary Evidence and/or Warrant Adverse Inferences.

During discovery, the Government served several interrogatories and requests for the production of documents on each Defendant. SUMF ¶¶ 33-34. These discovery requests sought, among other things, information on Defendants' finances, contracts and legally-required disclosures, customers, and business communications. *Id.* In response to each of these discovery requests Defendant Miller asserted his right to remain silent pursuant to the Fifth Amendment of the United States Constitution and Article 1, Section 10, of the Texas Constitution. SUMF ¶ 33. Defendant Turbo Solutions responded to each discovery request by stating "unknown." SUMF ¶ 34.

Pursuant to Rule 37(c)(1), "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," which requires parties to provide complete disclosures and discovery responses, the party is precluded from subsequently using the omitted "information or witness to provide evidence," including to defeat summary judgment, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Defendants cannot justify their failure to provide discovery, and it is not harmless, as it has denied the United States access to highly probative evidence

4

that cannot be obtained from other sources. Defendants are thus precluded from now offering any evidence to refute the material facts.

Defendant Miller's invocation of the Fifth Amendment, further, precludes him from providing testimonial evidence and permits this Court to draw an adverse inference against him. *See Hinojosa v. Butler,* 547 F.3d 285, 291 (5th Cir. 2008) ("[I]t is well settled that 'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'") (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976)); *see also FTC v. Williams, Scott & Assocs., Ltd. Liab. Co.,* 679 F. App'x 836, 838 (11th Cir. 2017) (Defendant who invoked the Fifth Amendment in discovery later precluded from "convert[ing] the privilege from [a] shield . . . into a sword" by putting his version of the facts into written affidavits).

### C.    Undisputed Evidence Establishes Defendants' Liability on All Counts.

#### 1.    Defendants Violated Section 5 of the FTC Act (Count I).

Section 5 of the FTC Act prohibits "unfair or deceptive practices in or affecting commerce."[1] 15 U.S.C. § 45. An act or practice is deceptive under Section 5(a) if it involves a material representation or omission that is likely to mislead consumers acting reasonably under the circumstances. *FTC v. USA Fin., LLC,* 415 Fed. Appx. 970, 973 (11th Cir. 2011); *FTC v. Namer,* 781 F. Supp. 1136, 1142 (E.D. La. 1991). A misrepresentation is material if it involves facts that a reasonable person would consider important in choosing a course of action. *See FTC v. Cyberspace.com, LLC,* 453 F.3d 1196, 1201 (9th Cir. 2006); *FTC v. Kennedy,* 574 F. Supp. 2d 714, 722 (S.D. Tex. 2008). Express claims are presumed material, so consumers are not required to question their veracity to be deemed reasonable.

---

[1] The Defendants maintained a substantial course of trade advertising, marketing and selling credit repair services and tradelines, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44. Defendants used instrumentalities of interstate commerce to sell, provide, and perform its credit repair services to out-of-state consumers, including by marketing its services via social media across state lines, and communicating with out-of-state clients via social media, the phone, and email. *See* SUMF ¶ 4.

*FTC v. Direct Mktg. Concepts, Inc.*, 2004 U.S. Dist. LEXIS 11628, at *13-14 (D. Mass. June 23, 2004). In considering whether a claim is deceptive, the Court must consider the "overall, net impression" created by the representation. *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008), aff'd 356 Fed. Appx. 358 (11th Cir. 2009); *FTC v. Stefanchik*, 559, F.3d 924, 928 (9th Cir. 2009); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000) ("the Court must consider the misrepresentations at issue, by viewing [them] as a whole without emphasizing isolated words or phrases apart from their context").

The Government need not prove reliance by each consumer misled by Defendants. *See FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 244 (2d Cir. 2014); *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1275 (S.D. Fla. 1999). "Requiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of [Section 13(b)]." *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) (citations omitted). Neither does the FTC need to prove that Defendants' misrepresentations were made with an intent to defraud or deceive. *See, e.g., Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1495 (1st Cir. 1989).

### a.     Defendants Promised Substantial Credit Score Increases.

On numerous occasions, Defendants have expressly stated and deliberately implied that their credit repair services will significantly improve consumers' credit scores using a two-step process: first, by removing negative information from consumers' credit reports or profiles, and second, via "credit building products", such as store credit cards or trade-lines, which add a positive credit history. SUMF ¶ 5. For the first step, Defendants claim to remove negative information through what they refer to as the "3 Round Burst," during which Defendants supposedly engage in "3 master rounds of advanced disputing" with each round lasting "30-40 days." SUMF ¶ 8. After this process, Defendants have claimed that consumers will "see massive deletion results"—*i.e.*, the removal of a massive amount of negative items from consumers' credit scores. SUMF ¶ 8. For example, Defendants have advertised

that they deleted numerous "negative accounts" from clients' credit reports, and have posted in large font and bold in Instagram, "Student Loans = Deleted[,] Collections = Deleted[,] Charge offs = Deleted[,] Evictions = Deleted[,] Bankruptcies = Deleted[,] Repos = Deleted[,] Late Payments = Deleted[,] Hospital Bills = Deleted[,] Foreclosures = Deleted." SUMF ¶ 9. These representations give the net impression that Defendants will affirmatively delete *any* negative information from consumers' credit scores—including information on loans, bankruptcies, and debts.

Defendants also market purported "credit-building products", which includes store credit cards (i.e., credit cards that can only be used to purchase goods or services from a particular merchant), and "trade-lines" or lines of credit to which consumers are added as an authorized user. SUMF ¶¶ 13, 16. Defendants repeatedly have advertised that these "credit-building" products will substantially increase consumers' credit scores—including via Instagram posts claiming that these products will "BOOST your scores," and "INSTANTLY populate you a [sic] credit score." SUMF ¶ 13. On multiple occasions, Defendants have expressly stated or implied that their credit repair services will substantially improve a credit score in a short amount of time. For example, their website has "guarantee[d] results in 40 days," and Defendants' repeatedly boast on Instagram of substantial credit score improvements for clients. SUMF ¶¶ 6-7. Defendants' agents also make these assertions to clients; one consumer was promised a 200-point credit score increase in 90 days. SUMF ¶ 7.

### b.    Defendants' Representations Are False.

It is undisputed that Defendants have no basis for these claims. According to Equifax and the Fair Isaac Corporation ("FICO"), no entity can guarantee specific credit score improvements in a specific time frame as claimed by Defendants, without first reviewing consumers' credit score and credit history information, which Defendants do not do before making these guarantees. SUMF ¶ 14. Further, neither a consumer nor a credit repair company can legally delete accurate, negative information that is not obsolete from a consumer's credit report. SUMF ¶ 15. Instead, information

such as bankruptcies falls off of consumers' credit reports in pre-specified time frames. SUMF ¶ 15. Accordingly, Defendants cannot improve consumers' credit score by deleting information from their credit reports, as they claim to.

The "credit building" products Defendants promote also do not achieve the results Defendants claim they do. Indeed, "trade-lines" Defendants sold are an outright scam, and consumers are never actually added as an authorized user to the line of credit they purchase. SUMF ¶ 16. Even if Defendants actually did provide the credit products they claim to, at best, these products *may* have a minimal positive impact on a consumer's credit score, but a positive impact is based on a number of factors and cannot be guaranteed. *See* SUMF ¶ 17. Evidencing the falsity of Defendants' claims, multiple consumers have reported that Defendants' credit repair services did not remove negative items from their credit reports or increase their credit scores. *See* SUMF ¶ 18.

### c.    Defendants' False Representations Are Material.

Defendants also cannot dispute that these false representations were material. Express claims or deliberately-made implied claims used to induce the purchase of a particular product or service are presumed to be material. *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1096 (9th Cir. 1994). Even still, multiple consumers reported they relied on Defendants' misrepresentations in deciding to purchase their services. SUMF ¶ 19.

### 2.    Defendants Violated CROA (Counts II–VI).

"Credit repair organization" means, among other things, "any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—(i) improving any consumer's credit record, credit history, or credit rating." 15 U.S.C. § 1679a(3). The undisputed evidence demonstrates that Defendants are credit repair organizations, *see* SUMF ¶ 20, and that they violated multiple

provisions of CROA.

### a.    Defendants Violated CROA Section 404(a) by making fraudulent or misleading representations (Count II)

Section 404(a)(1) of CROA, 15 U.S.C. § 1679b(a)(1), prohibits credit repair organizations from "mak[ing] any statement, or counsel[ing] or advis[ing] any consumer to make any statement, which is untrue or misleading . . . with respect to any consumer's credit worthiness, credit standing, or credit capacity to . . . any consumer reporting agency." Undisputed facts show that as part of their services, Defendants routinely filed or caused to be filed false identity theft reports on behalf of customers who were not, in fact, victims of identity theft. *See* SUMF ¶ 12 (detailing evidence that Defendants' employed individuals in the Philippines to file false identity reports *en masse*). These identity theft reports misrepresented to consumer reporting agencies that information on consumers' credit reports was false, or attributable to identity theft, in direct violation of Section 404(a)(1) of CROA.

Section 404(a)(4) of CROA, 15 U.S.C. § 1679b(a)(4), prohibits engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization. Defendants' practice of filing and/or causing to be filed false and deceptive identity theft reports on behalf of its customers also violates this provision of CROA.

Section 404(a)(3) of CROA, 15 U.S.C. § 1679b(a)(3), prohibits credit repair organizations from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Defendants have made untrue or misleading representations to consumers, including that Defendants will significantly improve consumers' credit scores by, among other things: a) removing negative information from consumers' credit reports or profiles; and/or b) selling credit building products, such as store credit cards, that will appear on consumers' credit reports or profiles. *See supra* § I.C.1 (describing Defendants' violations of the FTC Act).

**b.    Defendants violated CROA Section 404(b) by Charging Advanced Fees for Credit Repair Services (Count III)**

CROA Section 404(b) states, "No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b. In numerous instances, Defendants violated Section 404(b) by charging or receiving money for the performance of credit repair services that Defendants have agreed to perform before fully performing those services. ECF No. 14, SUMF ¶ 24. Defendants' own social media posts and marketing statements establish that they charge and collect illegal advance fees for their credit repair services and for extensions of credit, and Defendants' telemarketers and call center agents request and collect payment of these advance fees. SUMF ¶ 24.

**c.    Defendants violated CROA Section 405 by Failing to Make Required Disclosures (Count IV)**

CROA Section 405 requires credit organizations to provide consumers with a written statement titled "Consumer Credit File Rights Under State and Federal Law" containing the verbatim language contained in the statute before any contract for credit repair services is executed. *See* U.S.C. § 1679c. The statement must be "provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer." *Id.* Defendants have failed to provide a written statement of "Consumer Credit File Rights Under State and Federal Law," in the form and manner required by CROA, to consumers before any contract or agreement was executed. SUMF ¶ 25.

**d.    Defendants violated CROA Section 406 by Failing to Include Required Terms and Conditions in Contracts (Count V)**

CROA Section 406 prohibits a credit repair organization from providing services unless a consumer has signed a written contract for the purchase of such services which includes the terms and conditions specified in that Section, including "a conspicuous statement in bold face type, in

immediate proximity to the space reserved for the consumer's signature on the contract," which explains the consumer's right to cancel. 15 U.S.C. § 1679d. Defendants have violated Section 406 by failing to include the required language in their contracts in bold-face type in immediate proximity to the space reserved for the consumer's signature. SUMF ¶ 26.

> **e.    Defendants violated CROA Section 407 by failing to provide a copy of the contract and cancellation form (Count VI).**

CROA Section 407 requires that each contract between a consumer and a credit repair organization for credit repair services shall be accompanied by a form, in duplicate, which has the heading "Notice of Cancellation" and contains in bold face type a statement explaining how the consumer may cancel the contract. 15 U.S.C. § 1679e. CROA Section 407 further requires that "Any consumer who enters into any contract with any credit repair organization shall be given, by the organization--(1) a copy of the completed contract and the disclosure statement required under section 1679c of this title; and (2) a copy of any other document the credit repair organization requires the consumer to sign, at the time the contract or the other document is signed." *Id.* Defendants have failed to provide with their credit-repair consumer contracts a form with the heading "Notice of Cancellation," in the form and manner required by CROA. SUMF ¶ 27. Similarly, Defendants have failed to provide consumers who entered into a contract with Defendants a copy of the completed contract and all disclosures required under CROA and a copy of any other document Defendants required the consumers to sign. SUMF ¶ 27.

### 3. Defendants Violated the TSR (Counts VII-VIII).

Defendants are "sellers" or "telemarketers," engaged in "telemarketing," as these terms are defined in the TSR. 16 C.F.R. § 310.2(z), (bb) and (cc).[2] SUMF ¶ 28.

#### a. Defendants violated TSR Section 310.3 by engaging in deceptive telemarketing practices (Count VII).

The TSR prohibits "[m]isrepresenting, directly or by implication . . . [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii). Defendants have violated this prohibition numerous times in connection with the telemarketing of their credit repair services by misrepresenting material aspects of their services, including by representing that Defendants will significantly improve consumers' credit scores by, among other things: a) removing negative information from consumers' credit reports or profiles; and/or b) selling credit building products, such as store credit cards, that will appear on consumers' credit reports or profiles. *See supra* § I.C.1.

#### b. Defendants violated TSR Section 310.4 by engaging in abusive telemarketing practices (Count VIII).

Section 310.4(a)(2) of the TSR prohibits sellers and telemarketers from

> Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until: (i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and (ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved.

---

[2] Although Section 310.6(b)(5) of the TSR provides an exemption for telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, the Defendants do not qualify for this exemption. The exemption excludes, among other things, calls initiated by consumers in response to advertisements involving goods or services described in § 310.4(a)(2) for credit repair and § 310.4(a)(4) for advance fee loans or extensions of credit. 16 C.F.R. § 310.6(b)(5).

16 C.F.R. § 310.4(a)(2). In connection with the telemarketing of credit repair services, Defendants have charged or collected advance fees for credit repair in violation of Section 310.4(a)(2). SUMF ¶ 30.

Section 310.4(a)(4) of the TSR prohibits telemarketers and sellers from "[r]equesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person." 16 C.F.R. § 310.4(a)(4). Defendants have requested or received payment of advance fees for trade lines or other extensions of credit, which they have represented can be obtained with a high likelihood of success. SUMF ¶¶ 24, 30.

### 4.    Defendant Miller is Individually Liable for All Counts.

An individual is liable for violations of the FTC Act if he (1) "either participated directly in the deceptive acts or practices or had the authority to control them" and (2) "either knew or should have known about the deceptive practices." *FTC v. Bay Area Bus. Council*, 423 F.3d 627, 636 (7th Cir. 2005). Knowledge is proven "with evidence that the individuals had 'actual knowledge of the material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of high probability of fraud along with an intentional avoidance of the truth.'" *Id.* (citation omitted); *FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009).

Here, Defendant Miller controlled and was directly involved in every aspect of Defendants' credit repair business and was personally involved in the scheme. Defendant Miller was the founder, CEO, and principal of Turbo Solutions. SUMF ¶ 2. Defendant Miller was also personally responsible for Defendants' illegal credit repair business: for example, the Defendants' website states, "*Alex [Miller]* coined *his* credit repair process 'The 3 Round Burst'*," and advertises that "*Alex [Miller]* has helped thousands of consumers" improve their credit. SUMF ¶¶ 3, 8 (emphasis added). Defendant

Miller personally made numerous misrepresentations regarding Defendants' credit repair services, including via myriad videos and posts on Defendants' social media accounts. SUMF ¶¶ 4, 6. Furthermore, he held himself out as an expert in the laws applicable to credit repair. *See* SUMF ¶ 32. He asserted his Fifth Amendment rights in response to discovery requests that might have further demonstrated his knowledge of the practices of his credit repair business, warranting an adverse inference that his answers would have been inculpatory had he given them. *See supra* § I.B. And, again, Defendant Miller has admitted to violating the FTC Act, CROA and the TSR. *See supra* § I.A. This evidence establishes Defendant Miller's control over, knowledge of, and personal involvement in Defendants' illegal conduct, and he is personally liable both for monetary and injunctive relief.

## II.    PLAINTIFF IS ENTITLED TO ALL REQUESTED RELIEF.

### A.    Additional Injunctive Relief Is Necessary and Appropriate.

Defendants' disregard for the Permanent Injunction previously ordered by this Court demonstrates that more extensive injunctive relief, including a complete ban on their involvement in credit repair services, is necessary to protect consumers. A permanent injunction is justified when there is a "cognizable danger of recurrent violation, or some reasonable likelihood of future violations." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 898 (1953). To determine the propriety and scope of a permanent injunction, among other factors, courts consider the egregiousness and recurrent nature of defendant's actions, degree of scienter involved, sincerity of defendant's assurances against future violations, defendant's recognition of the wrongful nature of the conduct, and likelihood that the defendant's occupation will present opportunities for future violations. *See FTC v. Zaappaaz, LLC*, No. 4:20-CV-02717, 2024 WL 1237047, *6 (S.D. Tex. Mar. 21, 2024). Prior illegal conduct is highly suggestive of the likelihood of future violations. *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975). Here, the Court already recognized that a permanent injunction is appropriate to address the "threat of immediate and irreparable injury" due to

14

Defendants' illegal conduct, and it prohibited Defendants from collecting advance fees for credit repair services, communicating that any person can remove accurate non-obsolete negative information from a credit report or profile or can substantially improve a person's credit score or rating, or communicating any other untrue material fact about any credit repair service. ECF No. 14, at 2. Unfortunately for consumers, Defendants have repeatedly violated the Permanent Injunction. Since the Permanent Injunction was issued, Defendants have repeatedly stated and implied that their credit repair services could substantially improve individuals' credit scores in a short period of time, for example, via Instagram posts heralding purported 100 or 200-point credit score improvements in mere months. SUMF ¶¶ 37-40. Defendants also have repeatedly implied that accurate, non-obsolete information can be removed from credit reports. *See* SUMF ¶¶ 37-38. For example, Defendants advertised on Instagram on December 14, 2022, regarding a purported client's credit report, "Late pays Deleted! Collections Deleted! Charge offs Deleted! Bankruptcies Deleted!" (SUMF ¶ 38)—falsely indicating that these types of negative items can be affirmatively deleted by Defendants. *See* ECF No. 3-7. Defendants have also continued to collect illegal advance fees, as evidenced by their myriad Instagram posts demanding one-time or down-payments for their credit repair services and lines of credit. SUMF ¶ 41. For these reasons, Section I of the proposed order, which permanently bans Defendants from selling credit repair services, is appropriate. *See Zaappaaz,* 2024 WL 1237047, *6.[3]

Sections II and III of the proposed order would prohibit Defendants from making various misrepresentations regarding financial-related products and services or any other product or service. These injunctive provisions bear a reasonable relation to Defendants' unlawful practices and are

---

[3] *See also FTC v. Federal Check Processing*, 2016 WL 5940485, at *4, *7 (W.D.N.Y. Oct. 13, 2016), *aff'd sub nom. FTC v. Moses*, 913 F.3d 297 (2d Cir. 2019) (banning defendants from engaging in debt collection); *Instant Response Sys.,* 2015 WL 1650914, at *10 (E.D.N.Y. Apr. 14, 2015) (banning defendant from engaging in the marketing, promotion, sale of medical alert goods or services); *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 393–94 (D. Conn. 2009) (banning defendants from engaging in sales and advertisements of weight loss products).

intended to prevent Defendants from engaging in the same or similar illegal practices in the future. *See FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965) ("The Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. Having been caught violating the [FTC] Act, respondents must expect some reasonable fencing in."); *Litton Indus., Inc. v. FTC*, 676 F.2d 364, 370 (9th Cir. 1982) (reasonable fencing-in provisions serve to "close all roads to the prohibited goal, so that [the FTC's] order may not be by-passed with impunity").

The proposed order also contains various provisions courts have imposed in similar cases to ensure the orders' enforceability, including provisions requiring destruction of consumer information (Section V); order distribution (Section VI); compliance reporting (Section VII); maintenance of records (Section VIII); and compliance monitoring (Section IX). These provisions are proper to ensure compliance with the permanent injunctive provisions discussed above. *See, e.g., FTC v. OMICS Grp. Inc.*, 374 F. Supp. 3d 994, 1014, 1022-24 (D. Nev. 2019) (approving monitoring provisions to ensure compliance with permanent injunction); *FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202, 213 (D. Mass. 2009) (same).

      **B.**      **The Court Should Award a Civil Penalty of $10,000,000.**

Defendants' TSR and CROA violations are so central to their business model—inducing purchases of credit repair services through misrepresentations and then charging consumers in advance for those services—that they have committed multiple violations relating to each of their credit repair customers, whom Defendants claimed in 2021 already numbered more than 10,000 across the prior three years. SUMF ¶ 3. While the Government may seek more significant civil penalties if this case proceeds to trial, it conservatively requests that Defendants be held liable for at least $10,000,000 in civil penalties for the purposes of this motion.

Section 5(m)(1)(A) of the FTC Act states that a defendant "shall be liable for a civil penalty of not more than [$51,744] for each violation" of an FTC rule "with actual knowledge or knowledge

fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A); *see* 16 C.F.R. § 1.98(d) (setting maximum penalty). For civil penalties, the knowledge inquiry "is based on objective factors." *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 139 (4th Cir. 1996). A defendant is responsible if "a reasonable person under the circumstances would have known of the existence of the provision [here, CROA and/or the TSR] and that the action charged violated the provision." *Id.*[4]

As detailed above, Defendants repeatedly violated the TSR and CROA with the knowledge required by Section 5(m)(1)(A). In their answers to the Complaint, Defendants admitted they "have actual knowledge or knowledge fairly implied of the federal credit repair organization laws . . . that apply to and regulate credit repair organizations." *See* SUMF ¶ 32, ECF No. 2, ¶ 57; ECF No. 44 ¶ 57; ECF No. 45 ¶ 57. According to his website, Defendant Miller had "master[ed]" the "Laws that regulate the [credit repair] industry" and was "certified on consumer credit laws." SUMF ¶ 32. Further, Defendants undisputedly had knowledge of TSR and CROA after entry of the Permanent Injunction, after which they continued to violate TSR and CROA. *See supra* § II.A. Furthermore, Defendant Miller had full knowledge of his company's business practices. *See supra* § I.C.4.

In determining the amount of the civil penalty, the Court should "take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." 15 U.S.C. § 45(m)(1)(C). These factors support a substantial civil penalty—at the very least, a penalty of $10,000,000 sought by the Government, which amounts to only a small fraction of the total maximum potential per-violation penalty for its more than 10,000 violations and indeed is less than the $15 million in revenue

---

[4] *See also United States v. Dish Network LLC*, 954 F.3d 970, 978 (7th Cir. 2020) (holding that under Section 5(m)(1)(A), a defendant is liable if it either "knew that the act was unlawful or if it should have known the act was unlawful").

Defendants claimed in 2021 to have already made from their business. SUMF ¶ 3. Defendants are highly culpable. They knowingly and repeatedly lied to vulnerable consumers for years, bilking them out of millions of dollars for misrepresented credit repair services, and continued to violate the law even after being ordered by this Court to stop. *See FTC v. Braun*, 2024 WL 449288, *10 (S.D.N.Y. Feb. 6, 2024) (high culpability found for purposes of calculating civil penalties when defendant showed lack of remorse, and repeated illegal conduct). Defendants have refused to provide any discovery to the Government, and thus have provided no evidence refuting their ability to pay a $10,000,000 civil penalty or that there is any legitimate portion of their business that paying such a penalty would prevent them from operating. Defendants' Instagram page, however, indicates that Defendants are continuing to earn substantial profits from consumers, and thus likely could easily pay this conservative civil penalty. *See* SUMF ¶ 42. Regarding the fourth factor—justice—courts prioritize imposing penalties sufficiently large to deter future violations. *United States v. Reader's Digest Ass'n Inc.*, 494 F. Supp. 770 (D. Del. 1980), *aff'd*, 662 F.2d 955 (3d Cir. 1981) ("A civil penalty should be more than a mere 'license fee' or 'an acceptable cost of violation' of an order and should provide 'meaningful deterrence.'") (citation omitted). A $10,000,000 penalty should be sufficient to deter Defendants' unlawful conduct.

### C.    The Court Should Award $9,358,224.30 in Consumer Redress.

A full refund to consumers for Defendants' illegal credit repair services is necessary here to redress consumer harm. Section 19 authorizes the Court to grant "such relief as the court finds necessary to redress injury to consumers" for violations of rules[5] under the FTC Act, including "the

---

[5] Section 410(b)(1) of CROA, 15 U.S.C. § 1679h(b)(1), states that a violation of CROA "shall constitute an unfair or deceptive act or practice in commerce in violation of section 5(a) of the Federal Trade Commission Act." Section 410(b)(2) of CROA, 15 U.S.C. § 1679h(b)(2), provides that the FTC may enforce violations of CROA "in the same manner as if the violation had been a violation of any Federal Trade Commission trade regulation rule."

refund of money" and "the payment of damages." 15 U.S.C. § 57b(a), (b); *see also FTC v. Elegant Solutions, Inc.*, 2022 WL 2072735, *3 (9th Cir. Jun. 9, 2022) ("Section 19 expressly authorizes 'the refund of money' to remedy a violation of a rule such as the TSR."). Defendants' violations of the TSR and CROA include, among others, collecting illegal advanced fees and lying to consumers about their credit repair services. *See supra* §§ I.C.2-I.C.3. It is well-settled law that consumers that relied on a defendant's pre-purchase misrepresentations in violation of an FTC rule can only be redressed with a full refund. *See FTC v. Elegant Solutions, Inc.*, 2022 WL 2072735, *3 (monetary relief under Section 19 based on total consumer loss appropriate to redress consumers for defendants' misrepresentations and advanced fees in violation of TSR); *United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152, 1171 (C.D. Cal. 2021) ("The appropriate method to redress these consumers under Section 57b is to refund the amounts consumers paid."). This is true regardless of whether the consumer received anything of value from the purchase (although here, Defendants have proffered no evidence that they provided consumers anything of value). Because the seller's misrepresentations tainted the consumer's purchasing decisions, the consumer injury is the lost chance to "avoid the purchase entirely," and can only be redressed with a full refund "regardless of any value consumers later received from the product." *Zaappaaz*, 2024 WL 1237047, *9; *see also Figgie*, 994 F.2d at 606 ("[t]he fraud in the selling, not the value of the thing sold, is what entitles consumers in this case to full refunds . . . .).

The full amount of consumer payments to Defendants is the correct measure of consumer injury even in the absence of evidence that any individual consumer relied on Defendants' misrepresentations; Defendants' misrepresentations create a presumption that *every* consumer who purchased Defendants' credit repair services relied on those misrepresentations. The presumption or reliance arises when "(1) the defendant made material misrepresentations . . . of a kind usually relied upon by reasonable prudent persons; (2) [that] were widely disseminated; and (3) consumers actually purchased the defendants' products." *BlueHippo Funding*, 762 F.3d at 244; *Figgie*, 994 F2d at 605. Courts

have established such a presumption because the FTC Act "serves a public purpose by authorizing the Commission to seek redress on behalf of injured consumers," and "[r]equiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals" of the Act. *Figgie*, 994 F.2d at 605-09. The undisputed evidence shows that Defendants made repeated, widespread and material misrepresentations about their credit repair services on their website and social media. These misrepresentations were seen by a wide audience: Defendants' Instagram account alone, a primary vehicle for Defendants' dissemination of misrepresentations, had approximately 293,000 followers at one point during the relevant time period. SUMF ¶ 4. Because, as this Court has held previously and as described above, these Instagram posts included misrepresentations about Defendants' credit repair services, consumer reliance on these misrepresentations in purchasing Defendants' services is presumed.

Defendants claimed in early 2021 that they had already made more than $15 million in revenue, and they have continued to collect substantial sums of money from their illegal business in the years since then. SUMF ¶ 3. For purposes of this motion, however, the United States conservatively seeks only $9,358,224.30, the amount of revenue it could verify from a review of bank records from a limited time period of Defendants' operations, to redress consumer injuries. *See* SUMF ¶ 3.

## CONCLUSION

The evidence submitted clearly demonstrates that no genuine issue of material fact remains in dispute. Accordingly, the Court should enter summary judgment in Plaintiff's favor, holding the Defendants jointly and severally liable for their egregious violations of the FTC Act, CROA and the TSR. Plaintiff requests that the Court enter the [Proposed] Final Judgment and Order for Permanent Injunction and Other Equitable Relief, filed herewith.

Dated: August 28, 2024                           Respectfully submitted,

**FOR FEDERAL TRADE**                            **FOR PLAINTIFF UNITED STATES OF**
**COMMISSION:**                                  **AMERICA:**

ANISHA DASGUPTA                                  BRIAN M. BOYNTON
General Counsel                                  Principal Deputy Assistant Attorney General
                                                 Civil Division
MALINI MITHAL
Associate Director                               BURDEN H. WALKER
Division of Financial Practices                  Deputy Assistant Attorney General

HEATHER ALLEN                                    AMANDA LISKAMM
Assistant Director                               Director
Division of Financial Practices                  Consumer Protection Branch

GREGORY A. ASHE                                  LISA K. HSIAO
Federal Trade Commission                         Senior Deputy Director, Civil Litigation
600 Pennsylvania Avenue NW
Washington, DC 20580                             ZACHARY A. DIETERT
Telephone: 202-326-3719                          Assistant Director
Facsimile: 202-326-3768
Email: gashe@ftc.gov                             AMY P. KAPLAN
                                                 Trial Attorney

                                                 ALAMDAR S. HAMDANI
                                                 United States Attorney

                                                 DANIEL HU
                                                 Assistant United States Attorney


                                                 By: */s/ Marcus P. Smith*
                                                 MARCUS P. SMITH (admitted pro hac vice)
                                                 *Attorney -In-Charge*
                                                 Trial Attorney
                                                 Consumer Protection Branch
                                                 U.S. Department of Justice
                                                 P.O. Box 386
                                                 Washington, DC 20044
                                                 (202) 353-9712
                                                 marcus.p.smith@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document and all supporting materials were served upon all defendants by operation of the Court's CM/ECF System, on August 28, 2024. A copy of the foregoing and all supporting materials has also been sent by secure file share to alex@alexmillercreditrepair.com.

*/s/ Marcus P. Smith*