United States District Court
Southern District of Texas
**ENTERED**
March 14, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-2451 |
| | § § | |
| TURBO SOLUTIONS INC, ALEXANDER V. MILLER, in his individual and corporate capacity. | § § § § | |
| Defendants. | § | |

## ORDER FOR PERMANENT INJUNCTION, CIVIL PENALTY JUDGMENT, AND OTHER RELIEF

Plaintiff, the United States of America, acting upon notification and referral to the Attorney General by the Federal Trade Commission ("FTC"), filed its Complaint for Civil Penalties, Permanent Injunction, Monetary Relief, and Other Relief ("Complaint"), to obtain civil penalties, permanent injunctive relief, monetary relief, and other relief for Defendants' marketing and sale of credit repair services in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679-1679l, and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310. On August 28, 2024, the United States filed its Motion for Summary Judgment ("Motion"), as well as its Statement of Undisputed Material Facts and other materials in support of that Motion. Having considered the Motion and all supporting materials and any oppositions thereto, the Court finds that there is no genuine dispute as to any material fact and the United States is entitled to judgment against all Defendants (as the term is defined below) as a matter of law.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1. This Court has jurisdiction over the subject matter of this case and personal jurisdiction over Defendants.

2. Venue in this district is proper under 28 U.S.C. § 1391(b) and 15 U.S.C. § 53(b).

3. Defendants' activities are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4. Defendants are a "credit repair organization," as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3).

5. Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing," as those terms are defined in the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg).

6. The undisputed evidence establishes that Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); Sections 404(a), 404(b), 405, 406 and 407 of CROA, 15 U.S.C. §§ 1679b(a), 1679b(b), 1679c, 1679d and 1679e; and Sections 310.3 and 310.4 of the TSR, 16 C.F.R. §§ 310.3, 310.4. Specifically:

    a. Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by, in connection with the advertising, marketing, promotion, offering for sale, and sale of credit repair services, representing, directly or indirectly, expressly or by implication, that Defendants will significantly improve consumers' credit scores by, among other things, a) removing negative information from consumers' credit reports or profiles; and/or b) selling credit building products, such as store credit cards;

    b. Defendants violated Section 404(a) of CROA, 15 U.S.C. § 1679b(a), by, in connection with the operation of a credit repair organization,

        i. making statements, or counseling or advising consumers to make statements,

which are untrue or misleading with respect to their credit worthiness, credit standing, or credit capacity to consumer reporting agencies, including by filing or causing to be filed identity theft reports even when consumers have not, in fact, been victims of identity theft;

ii. making untrue or misleading representations to consumers, including that Defendants will significantly improve consumers' credit scores by, among other things: a) removing negative information from consumers' credit reports or profiles; and/or b) selling credit building products, such as store credit cards, that will appear on consumers' credit reports or profiles; and

iii. engaging, directly or indirectly, in acts, practices, or course of business that constitute or result in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization, including by filing identity theft reports on behalf of consumers even when consumers have not, in fact, been victims of identity theft;

c. Defendants violated Section 404(b) of CROA, 15 U.S.C. § 1679b(b), by, in connection with the operation of a credit repair organization, charging or receiving money or other valuable consideration for the performance of credit repair services that Defendants have agreed to perform before such services were fully performed;

d. Defendants violated Section 405 of CROA, 15 U.S.C. § 1679c, by, in connection with the sale of services to consumers by a credit repair organization, failing to provide a written statement of "Consumer Credit File Rights Under State and Federal Law," in the form and manner required by CROA, to consumers before any contract or agreement was executed;

3

e. Defendants violated Section 406 of CROA, 15 U.S.C. § 1679d by, in connection with the sale of services to consumers by a credit repair organization, failing to include in their consumer contracts the following required terms and conditions: the specific conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, regarding the consumers' right to cancel the contracts without penalty or obligation at any time before the third business day after the date on which consumers signed the contracts;

f. Defendants violated Section 407 of CROA, 15 U.S.C. § 1679e, by, in connection with the sale of services to consumers by a credit repair organization,

   i. failing to provide with their consumer contracts a form with the heading "Notice of Cancellation," in the form and manner required by CROA to consumers; and

   ii. failing to provide consumers who entered into a contract with Defendants a copy of the completed contract and all disclosures required under CROA and a copy of any other document Defendants required the consumers to sign;

g. Defendants violated Section 310.3 of the TSR, 16 C.F.R. § 310.3 by, in connection with the telemarketing of credit repair services, misrepresenting, directly or by implication, material aspects of the performance, efficacy, nature, or central characteristics of their credit repair services, including but not limited to, that Defendants will significantly improve consumers' credit scores by, among other things: a) removing negative information from consumers' credit reports or profiles; and/or b) selling credit building products, such as store credit cards, that will appear on consumers' credit reports or profiles; and

h. Defendants have engaged in abusive telemarketing practices in violation of Section

      310.4 of the TSR, 16 C.F.R. § 310.4, by, in connection with the telemarketing of credit repair services,

          i. requesting or receiving payment of a fee or consideration for credit repair services before: (a) the time frame in which Defendants have represented all of the credit repair services will be provided to consumers has expired; and (b) Defendants have provided consumers with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved; and

          ii. Requesting or receiving payment of a fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person.

7. Individual Defendant Alexander Miller had authority to control, participated in, and had knowledge of Defendant Turbo Solutions' deceptive marketing and sale of credit repair services.

8. A violation of CROA constitutes an unfair or deceptive act or practice in commerce in violation of Section 5(a) of the FTC Act (15 U.S.C. § 45(a)), 15 U.S.C. § 1679h(b)(1), and shall be treated as a violation of an FTC trade regulation rule. 15 U.S.C. § 1679h(b)(2).

9. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

10. Defendants have committed no fewer than 10,000 violations of CROA and/or the TSR.

11. A violation of CROA or the TSR made with the knowledge required by Section 5(m)(1)(A)

of the FTC Act, 15 U.S.C. § 45(m)(1)(A), is subject to monetary civil penalties for each violation. The maximum civil penalty for each violation is $51,744.

12. Defendants have actual knowledge or knowledge fairly implied of the federal credit repair organization laws or analogous state laws that apply to and regulate credit repair organizations.

13. Defendants' violations of the FTC Act, CROA, and the TSR have caused consumer injuries totaling at least $9,358,224.30.

14. In light of Defendants' conduct, there is a cognizable danger that they will continue to engage in unlawful conduct unless enjoined from such conduct.

15. This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

16. Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. **"Consumer"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

B. **"Credit Repair Service"** means any service, in return for payment of money or other valuable consideration, that is or is represented to be for the express or implied purpose of: (1) improving any consumer's credit report, credit record, credit history, credit profile, credit score, or credit rating; or (2) providing advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit report, credit record, credit history, credit profile, credit score, or credit rating.

C. **"Defendants"** means the Corporate Defendant and the Individual Defendant, individually, collectively, or in any combination. **"Corporate Defendant"** means Turbo Solutions Inc., formerly known as Alex Miller Financial Services Inc. and doing business as Alex Miller Credit Repair, and its successors and assigns. **"Individual Defendant"** means Alexander V. Miller.

## ORDER

## BAN ON CREDIT REPAIR SERVICES

I.  **IT IS THEREFORE ORDERED** that Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from:

   A. Advertising, marketing, promoting, offering for sale, selling, providing, or performing any Credit Repair Service; and

   B. Assisting others in advertising, marketing, promoting, offering for sale, selling, providing, or performing any Credit Repair Service.

## PROHIBITED BUSINESS ACTIVITIES

II. **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, distributing, servicing, offering, or selling any product or service, are permanently restrained and enjoined from:

   A. Misrepresenting or assisting others in misrepresenting, expressly or by implication:

   1. Any benefit of such product or service;

   2. Any requirements for obtaining such product or service;

   3. The existence, amount, or timing of any fees or charges, or the total cost to purchase, receive, or use such product or service; or

7

   4. Any other fact material to Consumers concerning such product or service, including any material restrictions, limitations, or conditions; or any material aspect of performance, efficacy, nature, or central characteristics.

B. Requesting or receiving payment of a fee or other consideration in advance of obtaining a loan or other extension of credit for a Consumer.

## INJUNCTION RELATING TO TELEMARKETING

III. **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the telemarketing of any product or service, are hereby permanently restrained and enjoined from violating the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310.

## MONETARY JUDGMENT AND CIVIL PENALTY

IV. **IT IS FURTHER ORDERED** that:

A. Judgment in the amount of NINE MILLION THREE HUNDRED FIFTY-EIGHT THOUSAND TWO HUNDRED TWENTY-FOUR DOLLARS AND THIRTY CENTS ($9,358,224.30) is entered in favor of Plaintiff against Defendants, jointly and severally, as monetary relief pursuant to Section 19 of the FTC Act, 15 U.S.C. § 57b, for Defendants' violations of CROA and the TSR.

B. Judgement in the amount of TEN MILLION DOLLARS ($10,000,000) is entered in favor of Plaintiff against Defendants, jointly and severally, as civil penalty pursuant to Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), for Defendants' violations of CROA and the TSR.

C. Defendants are ordered to pay to Plaintiff, by making payments to the Treasurer of the United States, the total amounts of the judgments entered in Subsections IV.A and IV.B,

within 7 days of entry of this Order by electronic fund transfer in accordance with instructions to be provided by a representative of Plaintiff.

D. Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

E. The judgment entered in Subsection IV.B of this Order represents a civil penalty owed the government of the United States, is not compensation for actual pecuniary loss, and, therefore, as to Defendants, it is not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(7).

F. Any money received by the United States pursuant to Subsection IV.A of this Order may be deposited into a fund administered by the FTC or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund. If a representative of the FTC decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, such money may be deposited to the U.S. Treasury. Defendants have no right to challenge any actions Plaintiff or the FTC or the representatives of either may take pursuant to this Subsection.

## CUSTOMER INFORMATION

V. **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order are permanently restrained and enjoined from directly or indirectly:

A. Failing to provide sufficient customer information to enable Plaintiff or the FTC to efficiently administer consumer redress. If a representative of Plaintiff or the FTC requests in writing any information related to redress, Defendants must provide it, in the form prescribed by Plaintiff or the FTC, within 14 days;

B. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendants obtained prior to entry of this Order; and

C. Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of Plaintiff or the FTC.

D. Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## ORDER ACKNOWLEDGMENTS

VI. **IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A. Each Defendant, within 7 days of entry of this Order, must submit to Plaintiff and the FTC an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 20 years after entry of this Order, Individual Defendant for any business that he, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, and Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents and representatives; (3) any business entity resulting from any change in structure referenced in the Section of this Order titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## COMPLIANCE REPORTING

VII. **IT IS FURTHER ORDERED** that Defendants make timely submissions to Plaintiff and the FTC:

A. One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1. Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of Plaintiff and the FTC may use to communicate with that Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to Plaintiff and the FTC.

2. Additionally, Individual Defendant must, in his compliance report: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest; and (c) describe in detail his involvement in each such

11

business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Corporate Defendant or any entity that such Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2. Additionally, Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C. Each Defendant must submit to Plaintiff and the FTC notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D. Any submission to Plaintiff or the FTC required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a representative of the FTC in writing, all submissions to

the FTC pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: United States v. Turbo Solutions.

## RECORDKEEPING

VIII.  **IT IS FURTHER ORDERED** that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendant and Individual Defendant, for any business that he, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A. accounting records showing the revenues from all goods or services sold;

B. personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C. records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D. all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the FTC; and

E. a copy of each unique advertisement or other marketing material.

## COMPLIANCE MONITORING

IX.  **IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A. Within 14 days of receipt of a written request from a representative of Plaintiff or the FTC, each Defendant must: submit additional compliance reports or other requested

13

information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. Plaintiff is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, Plaintiff and the FTC are authorized to communicate directly with each Defendant. Defendants must permit representatives of Plaintiff and the FTC to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C. Plaintiff and the FTC may use all other lawful means, including posing, through its representatives, as Consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the FTC's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D. Upon written request from a representative of Plaintiff or the FTC, any consumer reporting agency must furnish consumer reports concerning Individual Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## RETENTION OF JURISDICTION

X. **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

SO ORDERED this 3rd day of March, 2024.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE